UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES EDWARDS,

    Plaintiff,

v.

CRAIG ALAN MATTHEWS,
*et al.*,

    Defendants.

Case No. 2:17-cv-236

CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Partial Motion for Summary Judgment (*Def. Mot. S.J.*, ECF No. 25.) In turn, Plaintiff has filed a Response in Opposition (*Pl. Mem. Opp.*, ECF No. 31), and Defendants have filed a Reply Memorandum (*Def. Reply*, ECF No. 32). Additionally, Plaintiff has moved for leave to file a sur-reply and for oral argument (*Pl. Mot.*, ECF No. 33.) These motions are ripe for decision.

### I.    BACKGROUND

Plaintiff Edwards filed this action against Guernsey County (the "County") and two deputies from the Guernsey County Sheriff's Office, alleging a violation of his civil rights under 42 U.S.C. §1983 based on the violation of his right under the Fourth Amendment to the Constitution to be free from unreasonable searches and seizures, including the use of excessive force. (*Compl.*, ECF No. 1.)

### A. The Plaintiff

Plaintiff Edwards ("Plaintiff" or "Edwards") is a man who is 5'9" tall and weighs "approximately 340 pounds." (Compl., ECF No. 1, ¶ 10.) The essence of his complaint is that he was injured when Officers failed to use two sets of handcuffs to handcuff him:

> 14. The handcuffs caused severe pain as they pressed into Mr. Edwards' skin.
>
> 15. Due to his size, it was obvious that one set of cuffs was too short to restrain Mr. Edwards behind his back without causing injury, but Defendant Matthews ignored the obvious strain the handcuffs placed on Mr. Edwards' wrists.

(*Id.* at ¶¶ 14, 15.)

### B. The Defendants

Guernsey County is an independent governmental entity. Defendants Deputy Craig Matthews (hereinafter "Matthews") and Deputy Dale Morris ("Morris") (collectively, the "Officers") are being sued in their personal capacities and in their official capacities for actions taken while engaged in their duties as deputies in the Guernsey County Sheriff's Office. (*Compl.*, ECF No. 1, at pp. 2-3.)

### C. The Incident

There is no dispute that Plaintiff was driving with six passengers in his car when his vehicle was pulled over by officers on March 26, 2016, at approximately 3:13 a.m. His car matched the description of suspects fleeing a reported home invasion robbery, who were alleged to be armed. During the felony stop, Deputy Morris acted "as the contact officer and gave commands to the occupants of the suspect vehicle." (*Def. Mot. S.J.*, ECF No. 25, at p. 3.) "Deputy Morris ordered all of the occupants out of the vehicle and they were taken into custody one-by-one. Mr. Edwards was the first out of the vehicle and he was handcuffed by Deputy Matthews and placed in Matthews' cruiser." (*Pl. Mem. Opp.*, ECF No. 31, at p. 2.)

2

The issue in this case stems from Matthews' use of one set of handcuffs instead of two to handcuff Mr. Edwards. (*Pl. Mem. Opp.*, ECF No. 31, at p. 2.) Plaintiff alleges that "[u]sing one set of handcuffs squeezed Mr. Edwards['] arms together behind his broad back, causing the handcuffs to dig into his wrists." (*Id.*) Plaintiff asserts that, "[b]ecause of the tight handcuffs, Mr. Edwards suffered nerve damage that required prolonged treatment including surgery." (*Id.*, at p. 3.)

Plaintiff specifically alleges that Matthews and Morris were acting under color of State law, in the scope of their employment with, and pursuant to search and seizure policies, practices, procedures, and customs adopted by, Guernsey County. (*Id.*) He alleges that in using one set of handcuffs, Matthews "used excessive force in handcuffing Mr. Edwards, and Deputy Morris failed to intervene and stop Matthew's use of excessive force." (*Pl. Mem. Opp.*, ECF No. 31, at p. 1.) Against the County, Plaintiff asserts that:

> Guernsey County policies, practices, customs, training and supervision regarding subject control were the moving force behind the violations imposed on Mr. Edwards. Guernsey County ratified the unconstitutional behavior of the individual Defendants.

(*Compl.*, ECF No. 1, at p. 5.)

## II. FACTUAL ALLEGATIONS

### A. Plaintiff's Factual Allegations

Plaintiff alleges the following facts:

> He [Edwards] was handcuffed using one set of handcuffs, which creates a potential for wrist injuries for obese persons, particularly the longer they are handcuffed. (Rahtz Depo., Doc. 22, PageID #145:5-18). Using one set of handcuffs squeezed Mr. Edwards['] arms together behind his broad back, causing the handcuffs to dig into his wrists. He repeatedly complained of the pain he was in (Edwards Depo., Doc. 21, PageID # 85:8-14, 89:2-11, 93:16-22, 94:20-95:2). At one point, Deputy Matthews removed Mr. Edwards from his cruiser while Deputy Morris stood nearby. (*Id.* at PageID #89:2-11). Mr. Edwards heard Deputy Morris offer Deputy Matthews a second set of handcuffs, but Deputy

3

> Matthews rebuffed the offer. (*Id.*) Two sets of handcuffs are commonly linked together and used to handcuff obese persons to alleviate the pressure on their arms and wrists. (Rahtz Depo., Doc. 22, PageID #145:5-146:19). Mr. Edwards heard two clicks and the pain was not alleviated in any way. (Edwards Depo., Doc. 21, PageID #89:2-11). Mr. Edwards complained again of pain, but Deputy Matthews just put him back in the cruiser. (*Id.*)

(*Pl. Mem. Opp.*, ECF No. 31, at pp. 2-3.)

> While in the rear of the cruiser, Mr. Edwards continued to complain about the pain he was in through the partially open windows of the cruiser when Deputies Matthews and Morris were standing by the driver's door. (*Id.* at 93:16-22). Mr. Edwards also complained when Deputy Matthews got back in the cruiser to transport Mr. Edwards to the jail. (*Id.* at 94:20-95:2). The deputies ignored his complaints. Because of the tight handcuffs, Mr. Edwards suffered nerve damage that required prolonged treatment including surgery. (*Id.* at 106-110).
>
> The same day Mr. Edwards was arrested he texted a picture of his injured wrists to Defendant Sheriff Jeffrey Paden, who is a friend of his. (Edwards Depo., Doc. 21, PageID #99:1-23; Paden Depo., Doc. 30, PageID #464:5-466:14). Sheriff Paden did not respond to Mr. Edwards' text for three months. (*Id.*)
> ....
> Sheriff Paden admits there was no internal investigation of Mr. Edwards' complaint. (*Id.* at 506:18-507:22).

(*Id.* at p. 3.) Plaintiff further alleges that "[t]he single set of cuffs remained on Mr. Edwards, pulling on his arms behind his back for approximately 45 – 50 minutes." (*Compl.*, ECF No. 1, at ¶ 21.)

### B. The Officers' Factual Allegations

Deputies Matthews and Morris and Sheriff Paden presented their factual allegations in their declarations. (*Matthews Decl.*, ECF No. 25-1; *Morris Decl.*, ECF No. 25-2; *Paden Decl.*, ECF No. 25-3.)

#### 1. *Deputy Matthews' Declaration*

Deputy Matthews states in his declaration that he has been an employee of the Guernsey County Sheriff's Office since 2014, and has "handcuffed hundreds, perhaps thousands of persons." (*Matthews Decl.*, ECF No. 25-1, at ¶¶ 3, 7.) "Other than the allegations in this case, I

4

am not aware of any other person that I have arrested complaining of injury from my use of handcuffs; I have handcuffed many persons who were the size of Mr. Edwards or larger and had no difficulty applying a single set of handcuffs behind the person's back." (*Id.* at ¶¶ 13, 14.) During the felony stop, he had his gun drawn. He patted Mr. Edwards down for weapons, handcuffed him, and placed him in his cruiser. (*Id.* at ¶¶ 25-28.) "Because there were still six persons in the vehicle and it was reported they might be armed, I do not know if I double locked Mr. Edwards' handcuffs at that time. My main thought at that time was maintain security of the scene." (*Id.* at ¶ 29.) He did not recall any problems at that time. After the occupants of the vehicle had been detained, he "got Mr. Edwards out of my cruiser to check his handcuffs." (*Id.* at ¶ 30.)

> 32. I do not recall what Mr. Edwards specifically stated, but he must have made some comment or complaint about his handcuffs which caused me to get Mr. Edwards out of the cruiser to check on him;
>
> 33. When I got Mr. Edwards out of the cruiser I adjusted his handcuffs by loosening them. I then checked for secureness and comfort by checking the gap between the handcuffs and Mr. Edwards' wrists as described in Paragraph 9 above;
>
> 34. I then double locked the handcuffs so they could not tighten further and place[d] Mr. Edwards back into my cruiser;
>
> 35. Mr. Edwards made no other complaints to me about his handcuffs;
>
> 36. If Mr. Edwards had made further complaints, I would have responded to those complaints;

(*Id.* at ¶¶ 32-36.)

### 2. *Deputy Morris' Declaration*

Deputy Morris states in his declaration that he completed his peace officer training in 2004, served as an auxiliary police officer with the Cambridge Police Department from 2005-2010, was a full-time police officer there from 2010-2016, and since 2016 has been a Deputy

Sheriff with Guernsey County. (*Morris Decl.*, ECF No. 25-2, at ¶¶ 3-7.) He stated that, other than directing Mr. Edwards to exit the vehicle, he "had no other interaction with Mr. Edwards." (*Id.* at ¶ 29.) He "did not have any conversation" with Mr. Edwards; "did not hear Mr. Edwards speak about his handcuffs;" "did not hear any conversation between Deputy Matthews and Mr. Edwards;" "did not have any conversation with Deputy Matthews about Mr. Edwards;" and "did not offer a set of handcuffs to Deputy Matthews." (*Id.* at ¶¶ 30-34.)

### 3. *Sheriff Paden's Declaration*

Sheriff Jeffrey Paden is the elected Sheriff of Guernsey County. He became a law enforcement officer in 1990, and has been employed in the Guernsey County Sheriff's Office since 1994. In his more than 23 years at this office, he is not aware of any other lawsuit against an employee alleging "improper or excessively tight handcuffing." (*Paden Decl.*, ECF No. 25-3, at ¶¶ 3-6.) He states that:

> 8. It is the policy of the Guernsey County Sheriff's Office that "Employees may only use the force which is reasonably necessary to affect lawful objectives including: affecting a lawful arrest or overcoming resistance to a lawful arrest, preventing the escape of an offender, or protecting or defending others or themselves from physical harm." (See Use of Force Polic[y] attached hereto as Exhibit A.);
>
> 9. It is the policy of the Guernsey County Sheriff's Office to use handcuffs in a way that ensures security and comfort. To that end, deputies may use alternative handcuffing techniques, such as handcuffing in front or utilizing other restraints, when a detainee (1) is in an obvious state of pregnancy; (2) has a physical handicap; (3) is obese, and cuffs will not fit; or (4) has injuries that could be aggravated by standard handcuffing procedures. (See Transporting Arrested Persons Policy attached hereto as Exhibit B);
>
> 10. If a deputy ignored or failed to address a detainee's repeated complaints of excessive handcuff tightness, that deputy would be in violation of policy;
> ....
>
> 12. I have known James Edwards for years and consider him a friend;

(*Id.* at ¶¶ 8-10, 12.)

Additionally, Sheriff Paden states that he received a text message from Mr. Edwards sometime after the arrest, and went to his place of employment and spoke with him about the incident. (*Id.* at ¶ 14.) He recalled that Mr. Edwards said he had been handcuffed by one of his deputies, and the handcuffs injured his wrists, and he wanted his "medical bills related to his wrists paid for. I recall Mr. Edwards also complaining that he did not like the way Deputy Morris spoke to him." (*Id.* at ¶ 15.) He further states that:

> 16. Mr. Edwards did not tell me that he had repeatedly complained about the handcuffs and was ignored by the deputies. In fact, from what I recall, Mr. Edwards' complaint was not focused on the actions or inactions of the deputy that handcuffed him, but rather on injuries allegedly caused by the handcuffs and the responsibility to pay for the medical bills;
>
> 17. During this meeting with Mr. Edwards, he told me that he had retained an attorney. Because Mr. Edwards was represented by counsel, I did not feel it was appropriate to speak with him any further without his attorney present;
>
> 18. Following the meeting with Mr. Edwards, I spoke with deputies Matthews and Morris regarding the incident, reviewed their reports and watched Deputy Morris' cruiser and body cam videos. Regarding the handcuffing, both Deputy Matthews and the report indicate that Deputy Matthews adjusted and checked Mr. Edwards' handcuffs to ensure they were comfortable. Neither Mr. Edwards, nor the report, indicated that there were any further complaints regarding the handcuffs. Based on the facts known at the time, I did not believe that an internal investigation was necessary.

(*Id.* at ¶¶ 16-18.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. As the Supreme Court has explained, "the plain language of Rule 56[] mandates entry of summary judgment, after adequate time for discovery

and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). The central issue for the Court to determine is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### IV. MOTIONS FOR SUMMARY JUDGMENT

#### A. 42 U.S.C. §1983

Plaintiff's civil rights action, brought pursuant to 42 U.S.C. §1983, alleges that the officers executed the arrest with an excessive use of force in violation of the Fourth Amendment to the United States Constitution. The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

8

> particularly describing the place to be searched, and the persons or things to be seized.

42 U.S.C. §1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

In order to recover under a Section 1983 claim, a plaintiff must prove that the defendant, while acting under the color of state law, violated rights secured to the Plaintiff by the Constitution or laws of the United States. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The Sixth Circuit has held that it applies the Fourth Amendment's unreasonable search and seizure jurisprudence when analyzing an excessive force claim. *See Getz v. Swoap*, 833 F.3d 646, 653 (6th Cir. 2016). "Whether an officer has exerted excessive force during the course of a seizure is determined under an 'objective reasonableness' standard." *Id.* In assessing objective reasonableness, "courts must balance the consequences to the individual against the government's interests in effecting the seizure." *Id.* at 652, citing *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). Further,

> [w]hile the analysis is fact specific, three factors are of particular relevance: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' *Darrah v. City of Oak Park*, 225 F.3d 301, 307 (6th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). We judge the lawfulness of the conduct from the 'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' *Morrison*, 583 F.3d at 401 (quoting *Graham*, 490 U.S. at 396, 108 S.Ct. 1865).

*Getz*, 833 F.3d at 652-53. The Sixth Circuit "has never held that an officer's failure to check for tightness or double lock handcuffs at the moment of arrest is, *per se*, excessive force. The analysis is, as always, fact specific and based on the totality of the circumstances." *Id.* at 653,

citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). However, once the initial handcuffing is accomplished, the analysis changes after the arrestee complains that the handcuffs are too tight. At that point, for a claim to survive summary judgment, the Plaintiff must offer sufficient evidence to identify a genuine issue of material fact that "(1) he complained that handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the cuffing." *Id.* at 654.

## B. The County's Motion for Summary Judgment

The County moves for "complete summary judgment." (*Def. Mot. S.J.*, ECF No. 25, at p. 1.) The County asserts that "Guernsey County is entitled to summary judgment because Plaintiff has failed to offer any evidence that a policy, procedure or custom of Guernsey County was the moving force behind any alleged constitutional violation." (*Id.*). The County's motion is well taken.

### 1. County Policy

Local governments, such as Guernsey County, "can be liable under section 1983 for deprivations of federal rights but only if the deprivation was caused by an official municipal policy." *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 691 (1978). The policy or custom of the local government must be the moving force behind the deprivation of the plaintiff's rights. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010). Thus, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[1] *Monell*, 436 U.S. at 694. In other words, such liability may not be imposed based on the doctrine of *respondeat superior* "merely because the municipality employs a person who violates constitutional rights." *O'Kelly v. Russell Tp. Bd. of Trustees*, 675 F. Supp. 389, 394

---

[1] Ohio law creates both county and local governmental units. All are separate, independent institutions. For purposes of § 1983, counties and municipalities in Ohio are indistinguishable.

(N.D. Ohio 1987), citing *Monell*, 436 U.S. at 691. Rather, a local government entity may be liable under Section 1983 when its official policy or custom actually "serves to deprive an individual of his or her constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006). A local government entity's policy or custom may be unconstitutional if (1) it is facially unconstitutional as written or articulated; or (2) it is facially constitutional but "consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers." (*Id.*)

The Guernsey County Sheriff's Office Policies and Procedures set forth the manner in which officers will use handcuffs:

**POLICY:**

Personnel of Sheriff's Office take all reasonable precautions necessary to protect the lives and promote the safety of the officers, the public, and the person in custody while transporting detainees.

**PROCEDURES:**

**Prior to Transport:**

1. All detainees are *thoroughly* searched for any weapons or contraband (See policy regarding Searches) prior to transport.

2. The search should be conducted by an officer of the same sex of the detainee, whenever possible.

3. Transporting officers should search each detainee.

4. Transporting officers provide the dispatcher with the following information when possible:

   a. Identity of the detainee, (this information, along with a DOB, should be given so a warrant check can be completed);
   b. Arrest location and destination of transport; &

5. When transporting a detainee of the opposite sex the transporting officer shall radio the current vehicle mileage before beginning the transport and upon arrival to the jail. If the transport occurs after dark the interior dome light shall also be

11

activated. Any equipped audio and video recording devices shall be activated.

**Handcuffing and Other Restraints**

1. Officers handcuff all arrestees with their hands behind their back and palms facing outward, with the exception of instances such as listed in Item 2 below.

2. Officers may only handcuff detainees with hands in front, or utilize other appropriate restraining devices if the detainee:

   a. Is in an obvious state of pregnancy;
   b. Has a physical handicap;
   c. Is obese, and cuffs will not fit; or
   d. Have injuries that could be aggravated by standard handcuffing procedures.

3. All restraints should be double locked if equipped to do so and should be checked for proper fit and function so as to be sure the restraints are not causing injury to the arrestee.

(*Paden Decl.*, ECF No. 25-3, Exh. B.)

The Sixth Circuit has explained that, to meet the standard for municipal liability under *Monell*, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't.*, 8 F.3d 358, 364 (6th Cir. 1993). The County asserts that "[t]hese policies are facially constitutional and even Plaintiff's expert concedes that Guernsey County's handcuffing policy is reasonable and appropriate." (*Def. Mot. S.J.*, ECF No. 25, at p.10.) Plaintiff does not offer any evidence to the contrary.

### 2. *Training*

Plaintiff also alleges that the County is liable based upon inadequate training of the Officers, asserting that "[t]he training and supervision provided by Guernsey County to the Defendant deputies was deliberately indifferent to the safety of citizens, including citizens such

12

as Plaintiff, who are at risk of injury when arrested using techniques that foreseeably cause injury to overweight people." (*Compl.*, ECF No. 1, ¶ 28.)

A municipality is liable for violations "only if the injury is caused by a municipal custom or policy, or if the city's failure to train employees amounts to deliberate indifference to constitutional rights." *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 994 (6th Cir. 2017). In order to establish a claim based on deliberate indifference, the plaintiff "must show that the allegedly violated right was clearly established." *Id.* at 995. As noted above, the Sixth Circuit has explained that tight handcuffing does not *per se* constitute excessive force. Although a case directly on point is not required, the Supreme Court has explained that, in order to violate "clearly established statutory or constitutional rights of which a reasonable person would have known," "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).

The Sixth Circuit has held that, in order to "succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006); *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 794 (6th Cir. 2012).

Defendants assert that both Officers "completed the Ohio Peace Officer Training Commission's peace officer basic training program which included education in subject control techniques including handcuffing." (*Def. Mot. S.J.*, ECF No. 25, at p. 11; *Mathews Decl.*, ¶¶ 2, 5; *Morris Decl.*, ¶¶ 3, 7). Plaintiff fails to provide evidence to support an assertion that the

13

officers were not properly trained, and Plaintiff's expert did not testify that the training was inadequate:

> Q. Mr. Rahtz, you're not expressing any opinion in this case that Deputy Matthews' OPOTA training was inaccurate [sic][inadequate]. Is that correct?
>
> A. I'm not.

(*Rahtz Dep.*, ECF No. 22, 30:4-8).

In short, Plaintiff is unable to show that the handcuffing at issue violated a clearly established statutory or constitutional right of which a reasonable person would have known, which is required for a failure to train claim to succeed. As the Supreme Court explained, "[p]ut simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S.Ct. at 308 (2015), quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). In examining a failure to train claim against a municipality, the Sixth Circuit explained that "[t]he absence of a clearly established right spells the end of this *Monell* claim." *Arrington-Bey*, 858 F.3d at 995. Likewise, Plaintiff's failure to train claim in the case at bar fails for these reasons.

### 3. *Failure to conduct an investigation*

Plaintiff further alleges that the County impliedly approved of the alleged wrongdoing by failing to conduct a meaningful investigation into Plaintiff's alleged complaint. Sheriff Paden asserted that he did investigate Plaintiff's complaint, but, even if he did not, Plaintiff's allegations are insufficient to establish municipal liability. As explained in *Daniels v. City of Columbus*, No. C2-00-562, 2002 U.S. Dist. LEXIS 28130, 2002 WL 484622 (S.D. Ohio Feb. 20, 2002):

> In most cases, once an individual's rights have been violated, a subsequent failure to conduct a meaningful investigation cannot logically be the "moving force" behind the alleged constitutional deprivation. *See Tompkins v. Frost*, 655 F. Supp.

14

468, 472 (E.D. Mich. 1987) ("wrongful conduct after an injury cannot be the proximate cause of the same injury"); *Fox v. Van Oosterum*, 987 F. Supp. 597, 604 (W.D. Mich. 1997) (argument that decision not to investigate, made after the alleged violation took place, somehow caused that violation, defies logic). For this reason, mere ratification of the conduct at issue does not generally subject a municipality to § 1983 liability.

2002 U.S. Dist. LEXIS 28130, [WL] at*5; *See also Greenlee v. Miami Twp.*, No. 3:14-cv-173, 2015 U.S. Dist. LEXIS 18145 at *20-22, 2015 WL 631130 at *8 (S.D. Ohio Feb. 12, 2015). Put another way, a "single, isolated incident" of a failure to conduct a meaningful investigation or to discipline the officers involved cannot give rise to municipal liability. *Greenlee*, 2015 U.S. Dist. LEXIS at *22, [WL] at *8 (citing cases).

Inasmuch as Plaintiff does not provide sufficient evidence to raise a genuine issue of material fact that the alleged constitutional violations were incurred because of the County's policies on searches and seizures or officer training, or failure to conduct an investigation,[2] the County's Motion for Summary Judgment (*Def. Mot. S.J.*, ECF No. 25) is well taken, and is hereby **GRANTED**.

### C. Deputy Morris' Motion for Summary Judgment

Deputy Morris moves for summary judgment, asserting that he is entitled to qualified immunity. (*Def. Mot. S.J.*, ECF No. 25, p. 1). If the evidence, viewed in the light most favorable to Plaintiff, does not establish a *prima facie* case against Deputy Morris, then Deputy Morris is entitled to qualified immunity as a matter of law. *See Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

---

[2] Although Plaintiff's Complaint alleges that the County maintained unconstitutional policies, failed to train, and failed to investigate properly, Plaintiff asserts in his Memorandum in Opposition that "[t]he only basis for *Monell* liability that Plaintiff is pursuing is Guernsey County's ratification of Deputy Matthews' unconstitutional acts by failing to meaningfully investigate them." (*Pl. Mem. Opp.*, ECF No. 31, p. 9, n. 1.)

15

Plaintiff asserts that, after all of the suspects were in custody, about 20 minutes after the stop, Deputy Matthews took him out of the cruiser in response to Plaintiff's complaints about the tightness of his handcuffs. (*Pl. Mem. Opp.*, ECF No. 31, at p. 6.) Plaintiff asserts that he asked Deputy Matthews to loosen the handcuffs, and Deputy Morris told Matthews he had an extra set of cuffs, which Matthews declined. (*Id.*) Based on this alleged exchange, Plaintiff asserts that Morris "had reason to know Deputy Matthews was using excessive force on Mr. Edwards." (*Id.* at p. 7.) Deputy Morris asserts that he was not a part of any interchange between Plaintiff and Deputy Matthews, did not hear Plaintiff complain about tight handcuffs, and did not offer a second set of cuffs to Deputy Matthews. (*Def. Mot. S.J.*, ECF No. 25, p. 9.)

Morris concedes that "Officers who do not themselves exert excessive force may be liable for failure to prevent the excessive force by another. The liability is based upon whether the officers had the opportunity and ability to prevent the abuse." (*Def. Mot. S.J.*, ECF No. 25, at p. 8.) However, the officer must have done "more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." (*Id.*, citing *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).) Deputy Morris' dashcam video clearly shows that he was the contact officer who directed the suspects to get out of the car in accordance with his orders, but he did not participate in handcuffing the suspects. (Morris Cruiser Video ("dashcam"), ECF No. 26, Exhibit A.) The video does not show that Morris had any contact with the Plaintiff at all, but then, the video does not cover events after the securing of the suspects and the inventorying of the car. Deputy Matthews' video was unavailable. Thus, the video evidence is unhelpful in determining this issue.

Even assuming, *arguendo*, that Deputy Morris did offer Deputy Matthews a second set of handcuffs, Plaintiff cannot establish that Deputy Morris is liable for Deputy Matthew's failure to

16

use two sets of handcuffs. Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The threshold inquiry in a qualified immunity case is whether a constitutional or statutory violation has occurred at all. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Purisch v. Tennessee Technological University*, 76 F.3d 1414, 1423 (6th Cir.1996). As discussed above, courts have not clearly established a right to the use of two sets of handcuffs.

Even if Plaintiff could establish that failure to use two sets of handcuffs constituted excessive force, to hold Deputy Morris liable for the use of excessive force, Plaintiff must prove that Morris (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force. See *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir.1996), *cert. denied sub nom. Glover v. Durham*, 520 U.S. 1157, 117 S.Ct. 1337, 137 L.Ed.2d 496 (1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir.1993); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982), *cert. denied sub nom. Bates v. Bruner*, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983).

Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). But Plaintiff cannot satisfy either branch of this test. The evidence of record, including the dashcam video, shows that Deputy Morris was not a party to the initial handcuffing, nor did he supervise Deputy Matthews in his handcuffing of suspects. Plaintiff asserts that Deputy Morris was

standing near the cruiser when Deputy Matthews took him out of the cruiser to check on the handcuffs – but there is no evidence that Deputy Morris heard Plaintiff complain that the handcuff adjustment was insufficient. Plaintiff asserts that "Deputy Morris identified a solution, using two sets of handcuffs – but then chose not to solve the problem." (*Pl. Mem. Opp.*, ECF No. 31, at p. 9.) That fails to take into account the fact that there is no evidence to impute to Deputy Morris any knowledge that Plaintiff had any problem with the handcuffs after Deputy Matthews adjusted them. "The only affirmative testimony that Plaintiff offers regarding Deputy Morris is that Deputy Morris offered Deputy Matthews a second set of handcuffs." (*Def. Mot. S.J.*, ECF No. 21, at p. 4.) Thus, Defendants assert that "Plaintiff's testimony, accepted as true, does not establish any of the elements of an excessive force handcuffing claim." (*Id.*)

Plaintiff has failed to offer sufficient evidence to create a genuine issue of material fact that would link Deputy Morris to Plaintiff's injury. Accordingly, Defendant Morris's motion for complete summary judgment based on qualified immunity is **GRANTED**.

### D. Deputy Matthews' Motion for Partial Summary Judgment

Defendant Matthews moved for summary judgment on the basis of qualified immunity as to Plaintiff's "claims" that (1) Deputy Matthews used one set of handcuffs instead of two, and (2) the fact that Plaintiff was handcuffed for almost an hour. The evidence shows that Plaintiff was handcuffed with one set of handcuffs, and that he was in handcuffs for almost an hour. Defendants assert that neither of these factors would establish an excessive force claim based on tight handcuffing, and that Deputy Matthews should be granted summary judgment on these facts on the basis of qualified immunity.

To that assertion, Plaintiff seeks leave to file a sur-reply to assert that his excessive force claim cannot be parsed fact-by-fact. He asserts that he "was handcuffed once, by one officer, he

complained repeatedly, and his handcuffs were never loosened or adjusted in such a way to give him relief. His claim is based on this entire course of action and it cannot be divided up in such a way to grant the partial summary judgment sought by Defendant Matthews. The manner in which Mr. Edwards was handcuffed and the longevity of his handcuffing are relevant to Mr. Edwards' excessive force claim, but they are not elements or claims within themselves that lend themselves to partial summary judgment." (*Pl. Mot. to File Sur-Reply*, ECF No. 33-1, at p. 3.)[3]

The Supreme Court has explained that "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 136 S.Ct. at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074 (2011)). The correct inquiry is whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation he confronted. *Mullenix*, 136 S.Ct. at 309. No case has held that the use of one set of handcuffs is *per se* unconstitutional, and no case has held that being in handcuffs for nearly an hour is *per se* unconstitutional. However, those factors are not presented in a vacuum, and the question of qualified immunity must be considered in the "specific context of the case." *Id.* at 308. As the Supreme Court held in *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865 (1989), in determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable. *Id.* at 396–97, 109 S.Ct. 1865. Because this is a test of objective reasonableness, the underlying motivations of the officer in making the arrest should not be examined. *Id.* at 397, 109 S.Ct. 1865. "To put it another way, if there is a genuine issue of fact as to whether an officer's use of force was

---

[3] Inasmuch as the Court does not here parse the excessive force claim fact-by-fact, Plaintiff's motion for leave to file a sur-reply and for oral argument (*Pl. Mot. to File Sur-Reply*, ECF No. 33) is **DENIED as MOOT**.

objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful." *Kostrzewa*, 247 F.3d at 642.

As Defendants properly concede, factual issues remain for trial regarding Plaintiff's claims against Deputy Matthews:

> There are two factual issues remaining for trial regarding Plaintiff's claims against Deputy Matthews. Deputy Matthews has testified that he responded to Plaintiff's complaint about the comfort of the handcuffs by loosening the handcuffs and then double-locking them to ensure that they could not tighten further. (Matthews Decl., ¶¶ 33-34). Plaintiff denies that the handcuffs were loosened and has testified that Deputy Matthews intentionally tightened the handcuffs. (Deposition of James Edwards, Doc. 21, PageID # 91, 98). Plaintiff has also testified that he continued to complain about the handcuffs and his complaints were ignored. (*Id.* PageID # 92, 94-95). Deputy Matthews denies that he ignored Plaintiff's alleged complaints. (Matthew Decl., ¶¶ 35-36). Consistent with Sixth Circuit law (*Getz*, supra), if Plaintiff's allegations are true and Deputy Matthews (1) tightened Plaintiff's handcuffs and (2) ignored his complaints, then Plaintiff has stated a claim for a clearly established constitutional violation.

(*Def. Mot. S.J.*, ECF No. 25, pp.13-14.) Genuine issues of material fact remain regarding the conduct at issue, and summary judgment is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (*Def. Mot. S.J.*, ECF No. 25) is **GRANTED in part and DENIED in part**. Summary judgment is **GRANTED** in favor of Defendants Guernsey County and Deputy Morris, and is **DENIED** as to the excessive force claim against Deputy Matthews. Plaintiff's Motion for Leave to File Sur-Reply and for Oral Argument (ECF No. 33) is **DENIED as MOOT**.

**IT IS SO ORDERED.**

7-17-2018
**DATE**

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE